In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00145-CR

                                                ______________________________

 

 

                               ANTHONY JAMES HUDSON,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                            Trial
Court No. 21068

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Some
five years after his indictment on a charge of attempted indecency with a
child, Anthony James Hudson’s case was finally set for trial.  After having filed a motion to dismiss under
a claim that he had not been afforded a speedy trial and having heard that
motion denied, Hudson entered a plea of guilty. 
Pursuant to a plea bargain, the adjudication of Hudson’s guilt was
deferred; he was placed on community supervision for five years and was ordered
to pay a $2,000.00 fine.  Hudson now
appeals his conviction on the sole ground that the trial court erred in denying
his motion for a speedy trial.  Because
we find no error in the trial court’s actions, we affirm its judgment.  

            As a defendant accused of a
crime, Hudson had an interest in mitigation of the anxiety and concern that
accompanied his public accusation, avoidance of impairment to his defense, and
freedom from oppressive pretrial incarceration. 
Cantu v. State, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008)
(citing Barker v. Wingo, 407 U.S. 514, 532 (1972)).  The right to a speedy trial is guaranteed by
the Sixth Amendment to the United States Constitution.  Id. 
This right attached once Hudson was arrested or charged.  Id. 

            The right to a speedy trial defies
quantification in days or months.  Barker,
407 U.S. at 523. Thus, Texas courts “analyze federal constitutional
speedy-trial claims ‘on an ad hoc basis’ by weighing and then balancing the
four Barker v. Wingo factors.”  Cantu,
253 S.W.3d at 280.  These factors
include:  (1) the length of the delay,
(2) the reasons occasioning the delay, (3) the assertion by the accused of the
right to a speedy trial, and (4) the prejudice caused to the accused by the
delay.  Id.; Barker, 407
U.S. at 530.  “[T]he greater the State’s
bad faith or official negligence and the longer its actions delay a trial, the
less a defendant must show actual prejudice or prove diligence in asserting his
right to a speedy trial.”  Cantu,
253 S.W.3d at 280–81.  No one factor is
determinative, and all factors must be considered together along with relevant
circumstances on a case-by-case basis.  Id.
at 281.  

I.         Standard of Review

            “In reviewing the trial court’s
ruling on [an accused’s] federal constitutional speedy trial claim, we apply a
bifurcated standard of review:  an abuse
of discretion standard for the factual components, and a de novo standard for
the legal components.”  Id. at 282
(quoting Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)).  Review of the Barker factors involves
both legal and factual determinations, but “[t]he balancing test as a whole . .
. is a purely legal question.”  Id. (quoting
Zamorano, 84 S.W.3d at 648 n.19). 
Under an abuse of discretion standard, we defer to the trial judge’s
resolution of facts and reasonable inferences drawn therefrom, and we review
the evidence in a light most favorable to the ruling.  Id.  

II.        Analysis of the Barker Factors

            A.         The Length of Delay

            The Barker test is triggered
by a delay that is unreasonable enough to be considered presumptively
prejudicial.  Id. at 281.  In this case, Hudson’s indictment was filed
June 23, 2004, but no trial was conducted until July 2009.  A delay of approximately five years is
presumptively prejudicial.  Id.
(citing Phillips v. State, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983),
and Doggett v. United States, 505 U.S. 647, 651–52 n.1 (1992) (noting
courts generally find delays approaching one year presumptively
prejudicial)).  This factor weighs toward
a finding that Hudson was denied a speedy trial. 

            B.         Reason for the Delay

            When analyzing this prong of the Barker
test, “different weights should be assigned to different reasons.”  Barker, 407 U.S. at 531.  Deliberate attempts to delay trial in order
to hamper a defense is weighed heavily against the State.  Id.  More neutral reasons, such as negligence or
overcrowded courts are weighed less heavily. 
Id.  A valid reason for
delay “should serve to justify appropriate delay.”  Id. 
Although Hudson’s motion for speedy trial failed to analyze this factor,
the trial court promptly held a hearing on the motion for speedy trial, wherein
the State admitted that it had “no information as to what occurred from April ‘04
until . . . October 24th, 2006” aside from “pretrial negotiation.”  In addition to this admission, at a February
2009 setting, the State indicated it was not ready for trial because it
expected to try another case set for that week. Without further evidence, this
factor would weigh against the State and in favor of a finding of the denial of
a speedy trial.  

            But the delays attributable to the
State are not the entire story here.  The
case history reveals that Hudson’s actions also contributed to some delay.  The case was originally set for trial in December
2006 after discovery was completed in October of that year.  Hudson and his first appointed counsel agreed
to submit Hudson for a polygraph examination, the results of which caused a
modification of the State’s plea offer. 
At about this stage of the proceedings, Hudson became dissatisfied with
his court-appointed attorney; the trial court’s October 8, 2007 docket sheet
notes that “the defendant appeared, the Court could not reach the trial, and
the trial was rescheduled, that the defendant requested time to hire an
attorney.”  The trial court then allowed
Hudson two months to locate and retain an attorney.  It was not until December 2007 that Hudson
announced to the court that he had retained different counsel.  The State made clear that the parties “re-conducted
discovery,” and Hudson admitted that it took several months for his new counsel
to get fully acquainted with the case.  Pretrial
was set for March 24, 2008.  Although all
matters were agreed, on April 23, 2008, Hudson announced he had lost his job,
and the trial court was required to hold a hearing to determine whether he was
indigent at that time.  In October 2008,
the court was again unable to reach the trial.[1]  It was re-set for February 9, 2009, when the
State announced it was not ready to try the case because it expected another
case to go to trial.  Motions practice
and discovery continued until July 8, 2009, when the motion to dismiss was
filed.  

            Delay which is attributable in whole
or in part to the defendant may constitute waiver of a speedy trial claim.  State v. Munoz, 991 S.W.2d 818, 822
(Tex. Crim. App. 1999) (citing Dickey v. Florida, 398 U.S. 30
(1970)).  Hudson spent one year preparing
for his case before deciding he was dissatisfied with his court-appointed
attorney and announcing he had retained different counsel.  After the new attorney spent several months
preparing, Hudson lost his job and requested that an indigency determination be
made, resulting in an additional four-month delay. Although the State sought a
continuance on February 9, 2009, it was Hudson’s counsel who suggested trial be
held July 13, 2009.  We find that Hudson
contributed to the delay in his trial and hold that this Barker factor mitigates against a finding of a violation of Hudson’s
right to a speedy trial.

            C.        Assertion
of Right 

            Next, Hudson had the responsibility
to timely assert his right to a speedy trial. 
Cantu, 253 at 282 (citing Barker, 407 U.S. at
527–28).  Failure to make repeated
requests for a speedy trial “supports an inference that the defendant does not
really want a trial, he wants only a dismissal.”  Id. at 283 (quoting Barker, 407 U.S. at 534–36).

            Here, the motion for speedy trial
was not filed until July 8, 2009.[2]  It was heard and denied on the same day as
jury selection began for Hudson’s trial. 
Based on the delay in seeking speedy trial, we find this factor weighs
against Hudson.  See Dragoo v. State, 96 S.W.3d 308, 314–15 (Tex. Crim. App.
2003) (holding this factor weighed against defendant where he failed to assert
his speedy trial right for three and a half years until immediately before
trial, although represented by counsel); see
also Phipps v. State, 630 S.W.2d 942, 946 (Tex. Crim. App. [Panel
Op.] 1982) (remaining silent for four years and waiting one month before trial
to assert right to speedy trial makes it difficult to prove defendant was
denied right to speedy trial). 

            D.        Prejudice


            Prejudice occasioned by the delay in
proceeding to trial is assessed in the light of the three interests which the
right to a speedy trial was designed to protect:  (1) freedom from oppressive pretrial
incarceration; (2) mitigation of the anxiety and concern on the part of the
accused that accompanies a public accusation; and (3) avoidance of impairment
to the defense of the charges.  Barker,
407 U.S. at 532.  “[T]he burden is on the
accused to make some showing of prejudice which was caused by the delay of his
trial.”  Harris v. State, 489
S.W.2d 303, 308 (Tex. Crim. App. 1973).  

            Hudson posted bond in 2006;
therefore, he was not incarcerated for an unusually long period of time.  His brief acknowledges that he did not suffer
oppressive pretrial incarceration.  We
will thus begin with an examination of the level of anxiety which Hudson may
have experienced during the period between his indictment and his eventual
trial.  General anxiety is at least some
evidence of the type of anxiety to be considered under Barker, but it,
standing alone, is not sufficient proof of prejudice when “it is no greater
anxiety or concern beyond the level normally associated with a criminal charge
or investigation.”  Cantu, 253
S.W.3d at 285–86.  Besides the general
allegation in the motion that Hudson “has experienced much anxiety and concern,”
Hudson testified, “I’ve had to pass up jobs. 
I’ve stayed away from my family. 
Just scared to go anywhere, afraid I’m going to get in trouble for -- it’s
been real hard.”  Hudson was subject to
pretrial bond conditions and supervisory fees. 
He also testified that he lost his job at Clayton Homes for “missing too
many days coming back and forth to court and reporting,” but his reporting to
law enforcement officials was not due solely to this charge; it was also due in
part to his obligations to report while under community supervision as the
result of an unrelated “marijuana charge.” 
We do not find that Hudson’s level of anxiety exceeded that normally
associated with a charge of attempted indecency with a child.

            Limiting the possibility of
impairment of a defense is the most serious interest which is protected by the
right to a speedy trial.  Barker,
407 U.S. at 531.  If witnesses become
unavailable  during a delay or are unable
to recall events, prejudice is obvious.  Id.
at 532.  Hudson complains that the outcry witness
(the child’s great-grandmother) passed away in March 2006, three years before
Hudson’s assertion to right of speedy trial. 
Hudson expected her to testify that the child “was unsure if the conduct
even occurred on at least one occasion because [the child] may have been
dreaming.”  The child was interviewed in
2004 by the Child Advocacy Center. 
During the interview, she admitted that she may have been only dreaming
the first instance of attempted indecency. 
However, the child went further to describe two other separate instances
of attempted indecency by Hudson.  The
State suggested that the interview could be played for the jury to impeach the
child if she denied possibly only having dreamed the first instance.  Because the substance of the testimony Hudson
wished to preserve was available to him by sources other than the deceased
great-grandmother, we conclude that he failed to meet his burden to demonstrate
harm occasioned to his defense due to the death of the child’s
great-grandmother during the delay.  

            Hudson
also suggested that the child, who was nine at the time of the offense, may not
have been able to accurately recall the events due to the passage of time.  Again, it was Hudson’s burden to make a prima
facie showing of prejudice.  Dokter v. State, 281 S.W.3d 152, 159
(Tex. App.––Texarkana 2009, no pet.).  A
defendant must offer more than mere speculation of faded memories to show
prejudice.  Munoz, 991 S.W.2d at 829. 
Mere surmisal will not suffice to show harm.  Hudson failed to support his claim with
evidence that the child was unable to remember events involving him which
occurred in 2004.  Thus, we conclude
Hudson did not meet his prima facie burden to demonstrate that he suffered
prejudice.  This factor weighs against a
showing that the delay occasioned damage to Hudson. 

            E.         Balancing

            “Having addressed the four Barker
factors, we must now balance them.”  Dragoo,
96 S.W.3d at 316.  The only factor that
weighs in favor of Hudson is the presumptively unreasonable length of
delay.  The fact that Hudson contributed
to the delay, “quietly acquiesced in the delay for [several] years, indicating
that he really did not want a speedy trial,” and failure to demonstrate
prejudice, all weigh against him.  Id.  We hold that the weight of the factors,
when balanced together, leads us to conclude Hudson’s right to a speedy trial
was not violated.  See Dokter, 281 S.W.3d at
162 (holding near five-year delay did not violate right to speedy trial where
defendant waited fifty-five months to assert right).  

III.       Conclusion


            We
affirm the judgment of the trial court.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          January 27, 2010

Date Decided:             April 7, 2010

 

Do Not Publish











[1]The
record of the hearing suggests that neutral reasons, such as overcrowded
courts, served as the main reason for the delay. 





[2]A
letter sent to the State by Hudson’s counsel in December 2007 was intended as
notice of demand for a speedy trial.  Although
the letter contains a notation indicating a carbon copy was sent to the clerk,
the clerk’s record reflects it was not filed with the Court. The letter was
included as an exhibit at the hearing on the motion to dismiss.